**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CASE NO. 4:05CR412** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| v. | ) | |
| | ) | |
| **MICHAEL WHEATON,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendant.** | ) | |

This matter is before the Court on Defendant Michael Wheaton's Motion for New Trial (ECF Doc. No. 81). For the reasons stated within this opinion, the Court finds the interest of justice does not require a new trial. Therefore, Defendant's Motion is denied.

### I. FACTUAL BACKGROUND

Defendant Michael Wheaton was convicted on March 2, 2006, of Conspiracy to Distribute and Possession With Intent to Distribute Cocaine. On March 1, during deliberations, the Court was made aware of possible misconduct by Juror Number Ten. The Court immediately held a conference in chambers, with counsel present, to determine the nature and extent of any misconduct. During the conference, Juror Number Ten disclosed he had used his personal computer to: (1) play an audio CD of admitted evidence (Exhibit Number Forty-Eight) for the

entire jury, and (2) research the location of/distance between Austintown, Boardman, and Youngstown with a program called Microsoft© MapPoint© when jurors had a disagreement about the relative location of those cities. When questioned, Juror Number Ten said he had not used his computer to access the Internet, nor for any other research or calculations.

Immediately following the conference with Juror Number Ten, the Court called the entire jury to the courtroom in order to determine what effect, if any, the extraneous information had on their decision-making process. The jurors assured the Court their deliberations had not been affected by the extraneous information and they had used no other outside information. All jurors acknowledged the Court's repeated instruction to not conduct any independent research or consult any outside information in further deliberations. Accordingly, they were dismissed to continue deliberating.

At approximately 4.30 p.m., the Court received a note from the Jury Foreman advising the jury was hung and did not believe there was any way to resolve the deadlock. Acknowledging Defendant's concern about a juror "caving in" to pressure, the Court called the jury back into the courtroom to question jurors about the possibility of resolving the deadlock after an overnight adjournment. Juror Number Six, without revealing his position, admitted the jury was "still talking" but said he thought there was no possibility of a unanimous verdict. Because he appeared to be the only juror who felt further deliberations were hopeless, the Court asked jurors to reconvene in the morning after "sleeping on it." The Court re-emphasized its instruction to not consider any extraneous information, and adjourned for the night.

The following morning, again acknowledging Defendant's concern that individual jurors might cave in to pressure, the Court sent the jury a note before they began deliberations. The

note told jurors not to give up "firmly held convictions simply to get along or to end the case," and reminded them to only consider the testimony and admitted evidence when deciding the case. Later that morning the jury reached a unanimous guilty verdict.

Defendant filed his Motion for New Trial on March 15, 2006, alleging jury misconduct.[1]

## II. LAW AND ANALYSIS

### A. This Court has Broad Discretion to Grant or Deny a New Trial Motion

The Supreme Court has repeatedly held "the Constitution entitles a criminal defendant to a fair trial, not a perfect one." *Delaware v. VanArsdall*, 475 U.S. 673, 681 (1986). Reversal for error "regardless of its effect on the judgement[] encourages litigants to abuse the judicial process and bestirs the public to ridicule it." *Id*. The Court has recognized the central purpose of a criminal trial is to "decide the factual question of the defendant's guilt or innocence, [despite the] virtually inevitable presence of immaterial error." *Id* (internal citations omitted).

Federal Rule of Criminal Procedure 33 states "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial **if the interest of justice so requires**." Fed. R. Crim. P. 33(a) (emphasis added). The Sixth Circuit interprets Rule 33 as giving the trial court broad powers to grant a new trial if for any reason it concludes that a trial resulted in a miscarriage of justice. Furthermore, it holds the trial court's determination will not be overturned absent an abuse of discretion. *U.S. v. Hoffa*, 382 F.2d 856, 862 (6th Cir. 1967), *cert. denied*, 390 U.S. 924 (1968) ("[w]e have repeatedly held that the granting or refusing to grant [a new trial motion] rests within the sound discretion of the District Court and its action must stand in the absence of a clear showing of abuse of discretion")*; see also U.S. v. Barlow*, 693 F.2d 954, 966

---

[1] The Court granted Defendant's request for an extension of time to file his Motion.

(6th Cir. 1982) ("decisions [whether to grant a new trial] are addressed to the sound discretion of the trial judge whose decision is not to be disturbed absent a showing of abuse of discretion"). This broad discretion applies whether the new trial motion is based on newly discovered evidence, *Hoffa*, *supra*, unauthorized contact with jurors, *U.S. v. Pennell*, 737 F.2d 521, 533 (6th Cir. 1984), or juror misconduct, *Zuern v. Tate*, 336 F.3d 478, 486 (6th Cir. 2003).

The trial judge is granted such broad discretion because he or she sits in a unique position to be able to gauge the effect of unauthorized contact or juror misconduct on the jury's verdict. As Chief Justice Marshall wrote "evidence which the Court has heard . . . may make an impression not always to be communicated by a statement of that evidence." *Daniel*, 19 U.S. 542, 548 (1821). In line with *Daniel*, the Sixth Circuit has held "[t]he trial judge is in the best position to determine the nature of the alleged jury misconduct, and . . . is also in the best position to determine appropriate remedies for any demonstrated misconduct." *U.S. v. Copeland, Jr.*, 51 F.3d 611, 613 (6th Cir. 1995).

**B. Defendant's Right of Due Process is not Violated if his Motion is Denied**

In recognizing the trial judges' broad discretion in ruling on a defendant's Rule 33 motion, the Supreme Court has held "due process does not require a new trial every time a juror has been placed in a potentially compromising situation." *Smith v. Phillips*, 455 U.S. 209, 217 (1982).[2] As the Court indicated, some prejudice to the defendant must be shown before a new trial is granted based on juror misconduct:

---

[2] The Court recognized a trial court's discretion in granting a motion for new trial as long ago as 1821 when Chief Justice Marshall held a motion for new trial "is an application to the discretion of the Court." *U.S. v. Daniel*, 19 U.S. 542, 548 (1821). In oral argument, the Attorney General argued this proposition was already well established by numerous decisions of the Court. *Id*. at 546.

> [If a new trial were required for every incident of juror misconduct], few trials would be constitutionally acceptable. The safeguards of juror impartiality, such as *voire dire* and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.

*Id.*; *see also Remmer v. U.S.*, 347 U.S. 227, 230 (1954) (remanding case with instructions that "if [extraneous contact] found to have been harmful, to grant new trial"). Nevertheless, while motions for a new trial based on newly discovered evidence are not favored, and are granted only with great caution, motions based on other grounds should be decided based only on what the interest of justice requires. *U.S. v. Scroggins*, 379 F.3d 233 (5th Cir. 2004).

**1. The Proper Remedy For Juror Misconduct is a *Remmer* Hearing to Determine the Effect on Defendant**

Where unauthorized contact with a juror is alleged to have tainted a trial, a Remmer hearing is required. *U.S. v. Rugerio*, 20 F.3d 1387 (6th Cir. 1994); *U.S. v. Pennell*, 737 F.2d at 532. At the hearing, the trial court "determine[s] the circumstances [of the unauthorized contact], the impact thereof upon the juror, and whether or not it was prejudicial, . . . with all interested parties permitted to participate."[3] *Remmer v. U.S.*, 347 U.S. 227, 451 (1954). In *Rugerio*, the Sixth Circuit held the same remedy applied to cases of juror misconduct.[4] *Rugerio*, 20 F.3d at 1390 (asserting a television report tying defendant's trial counsel to organized crime

---

[3] As discussed below, *Phillips* reversed *Remmer's* presumption of prejudice standard; it did not, however, affect the hearing requirements.

[4] The Sixth Circuit discusses the distinction between juror misconduct and unauthorized contacts with a juror in footnote eleven of *Pennell*, and holds these standards apply equally in either case. *Pennell*, 737 F.2d at 533, FN11.

figures prejudiced defendant during deliberations).

Furthermore, the trial court is not to view juror testimony at the Remmer hearing as presumptively prejudicial. In its opinion in Rugerio, the Sixth Circuit wrote "juror testimony at the '*Remmer* hearing' is not inherently suspect." *Id.*; *see also Pennell*, 737 F.2d at 533 ("if a district court views juror assurances of continued impartiality to be credible, the court may rely upon such assurances in deciding whether a defendant has satisfied the burden of proving actual prejudice"). The Supreme Court takes the same position,[5] disagreeing with the argument that "[g]iven the human propensity for self-justification, . . . the law must impute bias to juror[ testimony at a *Remmer* hearing.] *Phillips*, 455 U.S. at 215.

**2. The Burden is on Defendant to Prove Prejudice Resulted From the Alleged Juror Misconduct**

Although prior Supreme Court decisions seemed to place the burden of proving juror misconduct was harmless on the prosecution, *see, e.g., Remmer*, 347 U.S. at 229; *Pennell,* 737 F.2d at 530-32, the Court in *Phillips* wrote: "This Court has long held that the remedy for allegations of juror partiality is a hearing in which the **defendant** has the opportunity to prove actual bias." *Phillips*, 455 U.S. at 215 (emphasis added). In its decision in *Pennell*, the Sixth Circuit clarified the impact of *Phillips*:

> In essence, *Phillips* reinterpreted *Remmer*. [T]he Court held that *Remmer* does not govern the question of the burden of proof where potential jury partiality is alleged. Instead, *Remmer* only controls the question of how the district court should proceed where such allegations are made, *i.e.*, a hearing must be held during which the defendant is entitled to be heard. [internal cite omitted] In light

---

[5] In fact, it was the Supreme Court's decision in *Phillips* that guided the Sixth Circuit's opinion in *Pennell*. Prior to *Phillips*, the Sixth Circuit viewed juror testimony at a *Remmer* hearing as "inherently suspect." *Pennell*, 737 F.2d at 533.

>of *Phillips*, the burden of proof rests upon a defendant to demonstrate that unauthorized communications with jurors resulted in actual juror partiality. Prejudice is not to be presumed.

*Pennell*, 737 F.2d at 532.

In light of *Rugerio* and *Pennell*, not only is no prejudice presumed from juror testimony at a *Remmer* hearing, but defendants have the burden of proof at all stages of the inquiry into possible jury misconduct. That defendants have the burden of proving prejudice makes sense in light of the fact they are challenging verdicts that are presumed valid.

**C. Defendant Was Provided an Adequate Remedy**

Immediately upon learning of possible juror misconduct (Juror Number Ten using his personal computer in the jury room during deliberations) the Court held a *Remmer* hearing in chambers, with counsel present, to determine the extent and effect on Defendant of the misconduct. Juror Number Ten revealed he had used his laptop computer to play an audio CD of admitted evidence (Plaintiff's Exhibit Number Forty-Eight) as well as a mapping program to find the locations of and distances between Youngstown, Boardman, and Austintown. When questioned, Juror Number Ten admitted he did not have access to the Internet on his computer during deliberations. Defendant, through counsel, was allowed to fully participate in the hearing; in fact, his questioning elicited the information regarding the map program.

Immediately after the individual *Remmer* hearing with Juror Number Ten, the jury reconvened in the courtroom and the Court questioned individual jurors regarding their ability to deliberate on a verdict without being influenced by the extraneous information introduced by

Juror Number Ten.[6] Each member of the jury claimed no prejudice towards Defendant resulted from the extraneous information introduced by Juror Number Ten, and assured the Court such information would not influence his or her decision. Again, counsel was allowed to fully participate.

**1. Defendant Failed to Prove Bias Affecting the Jury's Verdict**

As explained above, the mere receipt of extrinsic information, or juror misconduct, is not itself sufficient to warrant granting a new trial. Defendant must prove bias towards him resulted from the extraneous evidence. The Court observed the jury as a whole during trial, including Juror Number Ten's answers and demeanor during the *Remmer* hearing in chambers, and all jurors' responses to further questioning. It is well within the Court's discretion to believe or disbelieve individual juror's assurances of impartiality based on its observations. As the Sixth Circuit wrote, "if a district court views juror assurances of continued impartiality to be credible, the court may rely upon such assurances in deciding whether a defendant has satisfied the burden of proving actual prejudice." *Pennell*, 737 F.2d 533.[7]

Defendant's argument that the timing of the verdict supports an inference of prejudice does not hold weight. As this Court said when recessing for the night, sometimes clearer heads

---

[6] This was in effect a separate *Remmer* hearing with all jurors present, as its purpose was to determine the extent and effect of juror misconduct on the entire jury.

[7] The Ninth Circuit has held:
The trial judge is uniquely qualified to appraise the probable effect of information on the jury, the materiality of . . . extraneous material, and its prejudicial nature. He . . . observes the jurors throughout the trial, is aware of the defenses asserted, and has heard the evidence. The judge's conclusion about the effect of alleged juror misconduct deserves substantial weight.
*U.S. v. Plunk*, 153 F.3d 1011, 1024 (9th Cir. 1998) (quoting *U.S. v. Bagnariol*, 665 F.2d 877, 885 (9th Cir. 1981).

-8-

do prevail. Although not argued in the briefs, one juror's belief that further deliberations would prove fruitless does not imply coercion. Juror Number Six may have believed in Defendant's guilt when making that statement, rather than his innocence.

Defendant also failed to show how what would be common knowledge to a resident of Youngstown, Austintown or Boardman biased the jury's deliberations or verdict. Furthermore, extraneous information about the distances between those cities has no relevancy to any element of the crimes at issue. Accordingly, Defendant failed to show bias or prejudice resulted from the extraneous information; thus, the interest of justice does not warrant a new trial.

**2. Defendant Failed to Show Jurors' Continued Disregard of the Court's Instructions**

Unlike *U.S. v. Brown*, 108 F.3d 863 (6th Cir. 1997), the sole case Defendant relies on in support of his Motion, Defendant failed to offer proof of jurors' continued disregard of the Court's instruction to not consider extrinsic evidence. In *Brown*, defendant discovered the jury considered extrinsic evidence in reaching its verdict, after the court's instructions to the contrary following a prior incident. *Brown*, 108 F.3d at 867. Here, Defendant's argument appears to center on the original misconduct and extrinsic evidence, not that the jury continued to consider extrinsic evidence even after the Court's admonition and instructions to the contrary. Although Plaintiff raises but does not argue the issue, the Court could rightfully view it as waived during trial. Regardless, Defendant's argument does not support the granting of a new trial in the interest of justice.

## **1III. CONCLUSION**

Defendant has not shown any bias resulting from juror misconduct, nor any violation of his right to due process. Therefore, the interest of justice does not require a new trial. Defendant's Motion is denied.

April 12, 2006                                              s/ Christopher A. Boyko
   Date                                                         CHRISTOPHER A. BOYKO
                                                                United States District Judge